CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Jared.Buszin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICKY PONCE,<br><br>Defendant. | Case No. 25-CR-265 SI<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: August 28, 2026<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom 1, 17th Floor<br><br>Hon. Susan Illston |

**INTRODUCTION**

The defendant, Ricky Ponce, is a firearms and drug trafficker who is a longtime member of the Angelino Heights gang, a Sureño clique that operates in the Santa Rosa area of Sonoma County. The defendant has a lengthy criminal history going back more than a decade, which includes numerous instances where he has committed serious offenses while under judicial supervision. In 2024 and 2025, he worked with the leader of Angelino Heights to sell unserialized assault weapons, hundreds of rounds of ammunition, and thousands of counterfeit pills containing fentanyl to a confidential source working with federal law enforcement. That conduct resulted in his federal indictment in this case.

Based on the record as a whole, and upon consideration of the Guidelines and factors set forth in

18 U.S.C. § 3553(a), the United States respectfully recommends that the Court sentence the defendant to a 100-month term of imprisonment, to be followed by four years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

## RELEVANT BACKGROUND

### A. The Offense Conduct

The defendant is a longtime member of the Angelino Heights Sureño street gang operating in the vicinity of Santa Rosa in the Northern District of California. PSR ¶ 7. He was identified as a potential federal target around December 2024 when federal agents arranged for a confidential human source (CHS) to conduct a controlled purchase of firearms from the leader the Angelino Heights clique ("Co-Conspirator One"), who brought the defendant to the controlled buy as his trusted associate. *Id.*

On December 6, 2024, the CHS met Co-Conspirator One and the defendant at a prearranged location in Cloverdale, California. *Id.* ¶ 8. The defendant and Co-Conspirator One loaded boxes into the CHS's car containing three AR-15 style rifles, including two that were unserialized ghost guns, three rifle magazines, and 839 rounds of rifle ammunition. *Id.* ¶ 8-9.

**<u>Items Purchased During December 6, 2024 Controlled Buy</u>**



After loading the items into the CHS's car, the defendant and Co-Conspirator One entered the vehicle and the CHS paid Co-Conspirator One for the items. *Id.* ¶ 8. While Co-Conspirator One counted the money, the CHS asked the defendant about his connection to Co-Conspirator One, and the defendant told him that they had known each other for more than 15 years and had grown up "gang banging together." *Id.* ¶ 8. Before parting ways, the CHS confirmed for the defendant and Co-Conspirator One that he would be looking to make regular purchases of guns from them going forward. *Id.*

On January 3, 2025, Co-Conspirator One was arrested by state authorities and charged with various crimes. *Id.* ¶ 11. He was detained pending trial and, as a result, the defendant became the CHS's point of contact going forward for coordinating future purchases of illicit items. *Id.* Throughout February 2025, the CHS communicated with the defendant to coordinate the purchase of more firearms and ammunition, along with counterfeit M-30 pills containing fentanyl. *Id.* ¶ 12.

On February 25, 2025, the defendant and the CHS met at the same meeting location in Cloverdale. *Id.* ¶ 13. The defendant loaded a box into the backseat of the CHS's vehicle, which contained three unserialized AR-style rifles, fifteen boxes of rifle ammunition, and a bag containing blue M-30 fentanyl pills that were wrapped inside a sock.

**<u>Items Purchased During February 25, 2025 Controlled Buy</u>**











After loading the items into the CHS's vehicle, the defendant came inside the car and counted out the money the CHS had provided him for the firearms, drugs, and ammunition. *Id.* ¶ 13. During that time, the CHS talked about how he was prohibited from possessing firearms. *Id.* After some further conversation, the defendant and the CHS parted ways. *Id.* The M-30 pills provided by the defendant were sent to the DEA's Western Lab for testing, which confirmed 985 pills containing fentanyl with a net weight of approximately 107 grams. *Id.* ¶ 15.

In late March 2025, the CHS contacted the defendant and told him he would be back in town the following month and wanted to buy more firearms and fentanyl pills from the defendant. *Id.* ¶ 16. The defendant later confirmed he was securing M-30 pills for the CHS. *Id.* He said he had to drive down to Southern California to get them from a different source of supply, and he told the CHS he had ordered "two boats" (i.e., 2,000 pills) but would try to get more if the CHS wanted. *Id.* In a follow-up call, the defendant confirmed he would get the CHS "three boats" (i.e., 3,000 pills) but he was unsure if he would be able to get any firearms from his supplier by the time the CHS was in town. *Id.*

On April 15, 2025, the defendant met the CHS at the same prearranged location in Cloverdale to sell him the agreed contraband. *Id.* ¶ 17. The defendant got in the CHS's car and provided him with the M-30 pills. *Id.* He also told the CHS that he was working to get additional rifles to sell him. *Id.* The M-30 pills provided by the defendant were sent to the DEA's Western Lab for testing, which confirmed 3,136 pills containing fentanyl with a net weight of approximately 337 grams. *Id.* ¶ 18.

**Items Purchased During April 15, 2025 Controlled Buy**



**B. The Defendant's Criminal History**

The defendant's criminal history is significant and dates all the way back to 2010 when he was a minor. PSR ¶ 36-62. As a result, the defendant's criminal history score under the Guidelines is 19 and he falls in Criminal History Category VI. *Id.* ¶ 53.

The defendant's criminal history includes a number of vehicle offenses over the years, many of which involved the defendant associating with fellow Sureños and violating the law while on active court supervision. *Id.* ¶¶ 41, 42, 44, 45, 46, 48, 50.

His criminal history also includes a number of firearms offenses. In 2019, the defendant was convicted of a felony offense for unlawfully possessing an assault weapon, which resulted in a 16-month prison sentence. *Id.* ¶ 47. In January 2025, while the offense conduct in the instant case was ongoing, the defendant was arrested for unlawfully possessing ammunition, which ultimately resulted in a 90-day custodial sentence. *Id.* ¶ 49. And then in July 2025, while the defendant's court case for his January 2025 arrest was proceeding, the defendant was found in possession of a stolen firearm, about 50 rounds of ammunition, a knife, 20.4 grams (gross) of methamphetamine, and 2.4 grams (gross) of cocaine. *Id.* ¶ 50. That conduct led to a felony drug conviction and a 2-year prison sentence to run concurrent to the 90-day sentence the defendant received for his January 2025 offense. *Id.*

**C. Procedural History**

On August 28, 2025, a federal grand jury returned a six-count indictment charging the defendant with firearms and drug trafficking offenses arising from the offense conduct described above. PSR ¶ 1. On January 7, 2026, the Court issued a writ for the defendant to be transferred into federal custody from the California Department of Corrections and Rehabilitation, and he had his initial appearance in federal court on January 21, 2026. *Id.* ¶ 5. On June 12, 2026, the defendant pleaded guilty to Counts One, Two, Four, Five, and Six of the indictment pursuant to a plea agreement with the government. *Id.* ¶ 2. Sentencing is scheduled for August 28, 2026.

## SENTENCING GUIDELINES

The defendant's Guidelines calculation is uncontested. The parties and probation agree that the Base Offense Level is 30 because the offense involved 444.5 grams of a mixture or substance (pills) containing fentanyl. PSR ¶ 25. A 2-point enhancement applies because the defendant possessed a dangerous weapon in connection with the offense. *Id.* ¶ 26. After crediting the defendant for acceptance of responsibility, the Total Offense Level is 29.[1] *Id.* ¶ 34. The defendant's 19 criminal history points place him in Criminal History Category VI. *Id.* ¶ 53. This yields an advisory Guidelines range of 151-188 months imprisonment. *Id.* ¶ 84.

## SENTENCING RECOMMENDATION

**I. Legal Standard**

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Guidelines. *Id.* "The guideline range provides not only the starting point for sentencing but the lodestar from which the ultimate sentence must be explained and justified." *Galloway v. United States*, No. 16-71939, 2016 U.S. App. LEXIS 24280, at *16 (9th Cir. Sep. 16, 2016).

After determining the appropriate Guidelines calculation, the Court should then evaluate the

[1] The parties' plea agreement left open the possibility that an additional 2-point enhancement might apply pursuant to Section 2D1.1(b)(13)(B) of the Guidelines. PSR ¶ 4. The government is not requesting that the Court apply that enhancement.

sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. As relevant here, the factors the Court must consider include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant;

(5) Any pertinent policy statement issued by the Sentencing Commission and in effect at the time of sentencing; and

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II. Application of Section 3553(a) Factors

In light of the foregoing and upon consideration of the Section 3553(a) factors, as discussed below, the Court should impose a sentence of 100 months' imprisonment, to be followed by 4 years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

### A. Nature and Circumstances of the Offenses

The nature and circumstances of the defendant's offenses merit substantial punishment. Here, the defendant sold numerous assault weapons with hundreds of rounds of ammunition to a putative drug dealer who was also purchasing thousands of individual doses of fentanyl from him. The assault weapons the defendant sold were also largely ghost guns that lacked serial numbers, thereby thwarting registration requirements and tracing efforts if the firearms were ever used to commit a crime. Finally, the defendant's offenses involved multiple sales of firearms, ammunition, and fentanyl to the CHS over a prolonged period. The crimes do not arise from an isolated incident, nor do they stem from a misguided decision made in the moment while under the influence of drugs or alcohol. And the defendant continued to engage in these sales even after his associate, Co-Conspirator One, was arrested in January 2026 with a large number of firearms and narcotics that he planned to sell to another

customer.[2] The defendant knew his conduct was dangerous and wrong, but he went ahead anyway.

**B. History and Characteristics of the Defendant**

Although the defendant endured a challenging upbringing and expresses a desire to pursue future education and lawful employment, his history and characteristics include a number of troubling considerations. These include the defendant's significant criminal history and his longstanding affiliation with a violent Sureño street gang, which demonstrate the defendant has long posed a danger to the community. As to the defendant's gang association, the Court should take into account the fact that the defendant was identified as the trusted associate of the leader of his Sureño clique, Co-Conspirator One, which suggests he held a higher status within the gang.

**C. Deterrence, Promoting Respect for the Law, Protecting the Public, and Providing Just Punishment**

The defendant's criminal history and offense conduct demonstrates that a lengthier sentence is necessary to deter him from future criminal conduct, promote respect for the law, protect the public, and provide just punishment. The defendant's criminal history and the offense conduct in this case demonstrate the danger he poses to others. Those considerations also demonstrate that numerous prior interventions by the criminal justice system have been insufficient to dissuade the defendant from continuing to engage in conduct that endangers the public. Furthermore, the defendant's extensive history of committing crimes while subject to judicial supervision evinces a particular lack of respect for the law that supports a more significant sentence in this case.

**D. Avoiding Unwarranted Sentencing Disparities**

The need to avoid unwarranted sentencing disparities also supports the government's recommended sentence. According to the Sentencing Commission's JSIN data, in the last five fiscal years, the average and median custodial sentences imposed for defendants with an Offense Level of 29 in CHC VI whose primary Guideline was § 2D1.1 with fentanyl as the primary drug type were 102 and 107 months imprisonment, respectively. PSR ¶ 100.

---

[2] Although the details are not reflected in the PSR, Co-Conspirator One was arrested by California Highway Patrol on January 3, 2025 following a traffic stop that resulted in the discovery of approximately 14 firearms (including 10 unserialized AR-style rifles) and about 1,500 M-30 fentanyl pills (along with other drugs) in Co-Conspirator One's vehicle.

Here, a custodial sentence of 100 months is aligned with the JSIN data and would account for aggravating and mitigating considerations presented in this case while still ensuring the defendant receives a sentence that is not unfairly disparate from sentences received by other individuals whose offense conduct is similar.

**CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court impose a sentence of 100 months imprisonment, to be followed by four years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

DATED: August 21, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/S/
JARED S. BUSZIN
Assistant United States Attorney